UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | Case No. 21-MJ-5239<br><br>**<u>Filed Under Seal</u>** |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Google LLC, an electronic communications provider located in Mountain View, California, to disclose certain records and other information pertaining to the account alloxxio@gmail.com (herein, "Target Account"), as described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. Google LLC is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require Google LLC to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically,

the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i), (ii).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

THE RELEVANT FACTS

4. The United States has been investigating an online auction fraud scam concerning possible violation of, inter alia, 18 U.S.C. §§ 1343 (Wire Fraud), 1349 (Mail and Wire Fraud Conspiracy), 1956 (Money Laundering and Money Laundering Conspiracy), and 1962(d) (RICO Conspiracy). Recently, this has expanded into an investigation concerning the theft of Secret Service cryptocurrency, in violation of 18 U.S.C. § 641 (Theft of Government Funds) and 18 U.S.C. § 1956 (International Money Laundering).

5. The original investigation in this case has identified a criminal enterprise primarily located in Alexandria, Romania, that engages in a large-scale scheme of online auction fraud. The enterprise, referred to by law enforcement as the "Alexandria Online Auction Fraud Network" (hereinafter, the "AOAF Network"), is a wide-ranging online auction fraud and money laundering organization whose members post fake advertisements for vehicles and other items on legitimate online auction websites, lure victims into sending money for those goods, and launder the proceeds through several layers of transactions in order to profit off of victims in the United States.

6. Law enforcement began its investigation into the AOAF Network in late 2014 when the USSS, Kentucky State Police, and United States Postal Inspection Service learned of a registered agent and organizer of two bitcoin exchange companies who was involved in an apparent, ongoing scheme involving the fraudulent, online sale of nonexistent goods. In June 2015, the investigative team executed a search warrant on the registered agent's residence and business and the registered agent conceded his participation in the fraud scheme. He thereafter agreed to serve as a confidential source (hereinafter "CS") and began assisting the United States with its investigation into others involved in the AOAF Network.

7. The multi-year investigation has revealed a complicated scheme calculated to maximize profits for the AOAF Network, launder the proceeds of fraudulent conduct, and avoid detection from law enforcement. The fraud begins when foreign Fraudsters and their associates post advertisements on legitimate auction websites such as eBay for a variety of high-cost goods (typically vehicles) that do not actually exist. These Fraudsters and their associates would convince American victims to send money for the advertised goods by sending persuasive communications, for example, by impersonating a military member who needed to sell the advertised item before deployment or a person selling a vehicle on behalf of a deceased relative. The Fraudsters and their associates also used invoices that contained counterfeit trademarks of the online auction or sales websites to make the transactions appear legitimate. These invoices would instruct the victim on how to pay for the item and provide a false sense of security by explaining the safety measures in place to protect the buyer.

8. Once the victim agreed to the transaction, the AOAF Network engaged in a complex money laundering operation. Specifically, the Fraudsters and their associates would convince the victims to send money in various forms, including prepaid debit cards and bank wires.

This money would be directed towards co-conspirators in the United States who had been tasked with laundering the payments. These domestic money launderers (hereinafter "American Processors") and their associates subsequently exchanged the victim funds into bitcoin and sent the bitcoin abroad, keeping an agreed-upon percentage for themselves. The bitcoin would be received abroad by Fraudsters, who exchanged the bitcoin into fiat currency through foreign money launderers (hereinafter, "Foreign Processors"). Specifically, Foreign Processors sent the converted proceeds to the Fraudsters and their associates, who originally deceived the American victim.

9. The targets of this investigation send and receive multiple, interstate and international wires in furtherance of the scheme, including e-mail, telephonic (including text), and other chat communications about the scheme with co-conspirators; e-mail and telephonic (including text) communications with the victims enticing them to send money; communications to American-based websites to post advertisements online; and transfers of bitcoin online. This scheme also involves numerous mailings, most notably in victims sending payment for the items advertised online through the mail and American processors sending payment amongst each other through the mail. The investigative team has personally observed the distribution and receipt of these communications.

10. This scheme also involves extensive money laundering operations, where American processors receive victim payments in various forms, such as gift card, money order, and bank deposit, convert those methods of payment into other payment types—notably bitcoin, and transfer that money to members of the scheme outside the country that could not have redeemed the proceeds as easily and efficiently if they had received the victim method of payment

directly. The investigative team has personally observed the CS communicating about or actually converting victim money to send to the foreign-based cybercriminals or foreign-based launderers.

11. In June of 2018, the United States indicted several members of the AOAF Network. The CS no longer had the same level of activity and interaction with law enforcement at that point. He was charged by information on or around May 28, 2020, for his actions prior to becoming a confidential source. Around this time, the CS turned over much of his computer equipment and access credentials to a friend, Brandon Miller. Shortly thereafter, several thousands of dollars' worth of Secret Service cryptocurrency was stolen.

**alloxxio@gmail.com**

12. Among other acts, the United States oversaw the CS send and receive cryptocurrency utilizing bitcoin wallets generated for the sole purpose of the undercover operation. One wallet regularly utilized throughout the investigation was bitcoin wallet address 1MtgambXM37zPKQbVWeVRPvp4XhJo9wvgv (herein "1Mtg"). On July 15, 2020, the contents of this address were emptied out and directed to a foreign cryptocurrency wallet, without the knowledge or consent of the Secret Service. The United States is now investigating the movement of this cryptocurrency.

13. The Confidential Source denies any involvement in the movement of this cryptocurrency, and denied accessing any of his accounts, including the Target Account, during the relevant time. He further explained that Miller had the necessary information to access and move this cryptocurrency, as well as other CS accounts.

14. Through valid legal process, the investigative team obtained data from the Target Account, which was utilized by the CS throughout the investigation. These records demonstrated the alloxxio@gmail.com account experienced a login on July 15, 2020 (the same day the bitcoin

was stolen from the 1Mtg wallet). Records related to this account may reveal additional email addresses and non-content information related to activity on the account around the time of the theft of the cryptocurrency. There is reason to believe that obtaining information about the Target Account would be relevant and material to the ongoing investigation into the targets.

15. On April 14, 2021, the investigative team sought to preserve the alloxxio@gmail.com account by contacting Google. Google acknowledged receipt of this request and provided an internal reference number of 5667022.

REQUEST FOR ORDER

16. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individuals who are responsible for the events described above, and to determine the nature and scope of their activities. Accordingly, the United States requests that Google LLC be directed to produce all items described in Part II of Attachment A to the proposed Order.

17. The United States further requests that the Order require Google LLC not to notify any person, including the subscribers or customers of the account listed in Part I of Attachment A, of the existence of the Order until further order of the Court. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither

public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

18. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

CARLTON S. SHIER, IV
ACTING UNITED STATES ATTORNEY

By: /s/ Kathryn Anderson
Assistant United States Attorney
260 West Vine Street
Lexington, KY 40507
kathryn.anderson@usdoj.gov
(859) 685-4885